TRACY L. HENDERSON, ESQ. SBN 252888
LAW OFFICE OF TRACY L. HENDERSON, ESQ.
PO Box 221562,
Carmel CA 93922
(tel.) 831.917.1583
(email) tlhlaw@protonmail.com
Attorney for Petitioner John B. McVeigh

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN B. McVEIGH<br><br>    Petitioner<br><br>    v.<br><br>SAN FRANCISCO JOINT APPRENTICE & TRAINING COMMITTEE<br><br>    Respondent. | Case No.<br><br>VERIFIED PETITION FOR WRIT OF MANDATE SEEKING DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF<br><br>1. 42 U.S.C. § 2000e – Title VII of the Civil Rights Act First Amendment / Free Exercise Clause (policy mandating injection violates religious freedom)<br><br>JURY TRIAL DEMANDED FOR ANY FACTUAL DISPUTES |

## PETITION FOR WRIT OF MANDATE

### INTRODUCTION

1.      Petitioner John McVeigh ("Petitioner" or "McVeigh") is a wrongly-terminated union apprentice who comes to this honorable United States District Court under Title VII of the Civil Rights Act seeking to vindicate his right to be free of religious discrimination.

2.      McVeigh was discriminated against by Respondent San Francisco Joint Apprentice & Training Committee ("SFJATC"), as it enacted and enforced a COVID-19 Vaccination Policy ("the Policy"). The Policy required McVeigh (and the other apprentices) to be injected with an experimental substance ("vaccinated"), unless he obtained a "religious exemption," and did so before an arbitrary deadline specified in the Policy.

3.      The Policy was enacted *after* McVeigh joined the apprenticeship.

4.      McVeigh refused to take the injection. McVeigh had indeed requested the "religious exemption" contemplated by the Policy, but apparently not before the arbitrary deadline had passed. As a result, the SFJATC terminated McVeigh from his apprenticeship.

5.      In order to make McVeigh's termination appear justified after the fact, Respondent first went so far as to falsely accuse him of "unexcused absence" from a required class, when the truth is McVeigh was not *allowed* to attend class at that time. This, because he had not yet responded to the SFJATC's demand that he produce his private medical information ("vaccination status").

6.      McVeigh has a sincerely held Christian religious belief that the Covid-19 injections are satanic and evil because, among other things, human fetal tissue was used in their development. Allowing himself to be injected would be a blasphemy; and that he would be sin gravely to act in cooperation with the evil of abortion.

7.      Petitioner brings a Title VII claim for his injuries suffered under the unconstitutional and discriminatory Policy, seeking damages of not less than $609,912.10 for lost income, in an amount to be proven after an evidentiary hearing.

1

VERIFIED PETITION FOR WRIT OF MANDATE

8. Moreover, McVeigh believes and hereby asserts that his constitutional right to religious freedom, as codified under Title VII, remain in full force unless and until he voluntarily waives them. At no time did McVeigh waive any of his God-given, constitutionally-guaranteed and Title VII-codified religious rights, either explicitly or impliedly.

## PARTIES

9. Petitioner JOHN B. McVEIGH was an applicant in good standing in the electrical wireman's apprenticeship program until he was laid off from Contra Costa Electric due to his lack of proof of "vaccination" preventing him from working on a jobsite. This also, along with the pre-text of unexcused absences, led to his being terminated from the apprenticeship program. See Exhibit "H".

10. Respondent SAN FRANCISCO JOINT APPRENTICE & TRAINING COMMITTEE ("SFJATC") is a partnership between the International Brotherhood of Electrical Workers (IBEW) and the National Electrical Contractors Association (NECA). The JATC's mission is to train and recruit apprentices for the electrical industry.

## JURISDICTION AND VENUE

11. Original federal question subject matter jurisdiction is given by Title VII of the Civil Rights Act.

12. Venue is proper in this District because the events leading to this action occurred in the County of San Francisco.

## FACTS AND ADMINISTRATIVE PROCEDURAL HISTORY

13. John McVeigh was chosen out of many applicants to enter into the electrical "inside wireman" apprenticeship program with IBEW local 6 in 2017. He waited a year and a half to get into this exclusive union.

14. On 05/20/2019, McVeigh signed the Apprentice Agreement, which contained no mention of any COVID-19 or mandatory injection policy. (see Ex. "A")

15.     McVeigh got good job performance reviews (see Ex. "B") and received excellent grades. (see Ex. "C").

16.     McVeigh was asked back to jobs, was the only one asked to work at a data center, volunteered in the union hall to cook meals, volunteered to proctor for incoming apprentices, and volunteered to help build a lab for his teacher.

17.     On 05/12/2021, McVeigh received a "New Instructor" email/invite to participate in-person for lab building. There were no COVID requirements mentioned. From 06/08/21 – 09/01/21 McVeigh ended up putting in over 35 hours of unpaid volunteer time in the lab,

18.     On 07/12/2021, McVeigh was Sworn in to IBEW Local 6.

19.     On 10/29/2021 McVeigh received a "MANDATORY VACCINATION STATUS SURVEY" email from Pete Chursin, the Training Director of the SFJATC. Believing he has a right to medical privacy, McVeigh did not respond. The Policy had not been promulgated at this time.

20.     Then, one day during the volunteer lab build, his teacher started asking students to show him their "papers please." Mr. McVeigh's teacher began violating McVeigh's (and the other apprentice's) medical privacy by demanding their COVID "vaccination status." This was just the beginning.

21.     On 11/16/2021 McVeigh was summoned to a Committee meeting for being "unvaccinated" while participating in labs. This was still *before* the Policy was enacted.

22.     On 11/23/2021, a Committee meeting was conducted at which SFJATC, and specifically Training Director Chursin, and the committee members, began harassing Mr. McVeigh personally by demanding to know his "vaccination status" (Ex. "D" pp. 1-12).

23.     McVeigh is advised that this enquiry was harassing and in violation of the SFJATC's Equal Employment Opportunity Pledge (Ex. "F"), and a violation of applicable laws.

24.     Ironically, this harassment was done directly by the person – Pete Chursin – to whom the SFJATC board delegated the responsibility to ensure discrimination, harassment, intimidation and retaliation did not happen. (Ex. "F").

VERIFIED PETITION FOR WRIT OF MANDATE

25. Under duress, to make the harassment stop, on November 16, 2021, Mr. McVeigh informed the SFJATC that he was not COVID injected. (Ex. "E"). Note: this was *still* prior to the enactment of the Policy.

26. On 12/14/2021, McVeigh received a Notice of Suspension for 60 days. McVeigh is informed and believes that the reason for the 60-day suspension was that he had first refused to produce his private medical information (i.e. the fact that he had not allowed himself to be injected), and that he had subsequently "admitted" as much, albeit under coercion (Ex. E).

27. Believing that he had done nothing wrong, but not understanding the legal process in play, McVeigh did not appeal the 60-day suspension.

28. Later in December 2021, the SFJATC presented McVeigh with a "Zero Tolerance Agreement" which he was forced to sign, under duress, on 12/17/2021 under threat of being terminated if he did not sign it. The "Zero Tolerance Agreement" stated that any future violation of the Apprenticeship Policies and Procedures ("P&P") could result in cancellation of his Apprentice Agreement, i.e. termination of his apprenticeship, thus termination of his career that he had worked so hard to achieve.

29. Mr. McVeigh never agreed to any COVID policy or any mandatory injection policy. because it was not in effect when he joined the apprenticeship, nor at the time of the 60-day suspension.

30. On or about January 3, 2022 the SFJATC enacted the herein challenged Policy, which required that all apprentices be "vaccinated" to attend class or obtain a medical or religious "exemption".

31. On February 25, 2022, the SFJATC emailed apprentices (including McVeigh) that if they did not wish to be "vaccinated" they could request a "leave of absence" not to exceed six months (Ex. "D" pp. 5).

32. On March 16, 2022, the SFJATC emailed McVeigh to inform him that it had not yet received from him either proof of "vaccination", or a "leave of absence" request (no longer

offering an opportunity for religious accommodation). The communication threatened McVeigh that the "deadline" to provide one of those things was 2 days later – March 18, 2022 (Ex. "D" pp. 6).

33.    McVeigh did not waive his right to religious freedom, or his right to bodily autonomy, either explicitly or impliedly, effective March 18, 2022, or ever.

34.    While it may be asserted that McVeigh impliedly waived his right to be free of compelled speech by producing his private medical information by finally "admitting" that he was not "vaccinated," he did so only under duress due to the the coercive threat of being terminated.

35.    On July 26, 2022, McVeigh submitted another note (signing his name under duress) to the SFJATC indicating that he had not been COVID-injected (Ex. "G"). Far from stopping the harassment; again, the harassment escalated to the SFJATC Committee.

36.    Over the next few months Mr. McVeigh was summoned by Mr. Chursin to the SFJATC Committee on at least two more occasions (Ex. "H, K"), and he was mentioned in at least five committee meetings for no valid reason other than he was not COVID-injected.

37.    Mr. Chursin made up a series of false reasons which were merely pretext – including ridiculously accusing McVeigh of lying to the local Elks Lodge about his vaccination status.

38.    During the week of August 15-19, 2022, Mr. McVeigh was falsely accused of having five "unexcused absences" from class in addition to an unfounded accusation of an additional week of missed classes. The truth is that he was *not allowed* to attend class, because he had been coerced to "admit" he had not allowed himself to be injected with the experimental substance.  (Ex. "D" pp. 6, 8; Ex. "H").

39.    McVeigh's reasons for refusing the injection included that it conflicted with his deeply held religious beliefs, and that it conflicted with his right to bodily autonomy.

40.    McVeigh is informed and believes, and on that basis alleges, that the injections were developed using human fetal tissue cells, which practice is satanic and evil. Allowing his

body to be injected with this substance (whatever it is called) would be a blasphemy; and that he would be sin gravely to act in cooperation with the evil of abortion.

41.     McVeigh further is informed and believes, and on that basis alleges, that the injections were rushed to market, had not been properly subjected to double-blind scientific medical trials, and were therefore experimental. Indeed, mandating the injections was exactly the medical trial taking place, and McVeigh wanted no part of it.

42.     By July 2022, McVeigh had already informed the SFJATC twice that he had not allowed himself to be injected. Nevertheless, at that time, again the SFJATC demanded about his private medical information (i.e. his "vaccination status") and threatened him that, if he failed to answer, he would be subject to discipline up to and including termination of his Apprentice Agreement.

43.     On July 26, 2022, McVeigh again notified the SFJATC that he had not received an injection (Ex. G). McVeigh did not provide an explanation for why not, because he believed that he had no duty to "explain" his religious freedom.

44.     On August 22, 2022, the SFJATC sent McVeigh a letter threatening him that his "unexcused absences" were a violation of the P&P, and summoning him to the September 21, 2022 SFJATC meeting (Ex. H).

45.     In a September 20, 2022 email and in a personal statement he read at the September 21, 2022 meeting, McVeigh for the third and fourth times stated that he was refusing to submit to the experimental injection, although this marked the first and second times he explicitly objected on religious grounds (Ex. J).

46.     Instead of tabling the matter and proceeding to meaningfully engage in an interactive process to determine if a reasonable accommodation could be made to accommodate Mr. McVeigh's religious beliefs, at that September 21, 2022 SFJATC meeting, McVeigh's Apprentice Agreement was officially terminated, and McVeigh was provided with written notice later that same day (Ex. K).

47. SFJATC *never* engaged in in an interactive process to determine if a reasonable accommodation could be made to accommodate Mr. McVeigh's religious beliefs.

48. McVeigh promptly appealed the decision to terminate his apprenticeship.

49. On or about 10/19/2022, McVeigh's appeal to the SFJATC was denied (and notice of same provided).

50. On or about November 17, 2022, McVeigh filed a complaint with Department of Apprenticeship Standards ("DAS").

51. The DAS conducted an investigation and referred the matter for hearing before Hearing Officer Mirna Solis. A prehearing conference was held, and proposed exhibits were filed.

52. The DAS conducted a duly noticed hearing on June 13, 2023 and October 3, 2023, at which McVeigh and the SFJATC were represented by counsel and at which certain exhibits were admitted and testimony was provided (including by McVeigh).

53. Per the Hearing Officer's direction, closing briefs were filed by both sides on November 6, 2023, and the matter was deemed submitted.

54. On May 20, 2024, the Administrator issued her Decision, finding that the SFJATC had good and sufficient reason to cancel McVeigh's Apprentice Agreement and, accordingly, dismissed McVeigh's complaint and terminated McVeigh's Apprentice Agreement with the SFJATC.

55. On or about May 30, 2024, McVeigh filed with the CAC a Notice of Appeal of the Administrator's Decision. On or about September 6, 2024 the case was appointed to a three-member panel of the CAC appeal board.

56. On or about January 23, 2025 a three-member panel of the CAC Appeal Board found the matter appropriate for resolution without a hearing, based on the record before the Administrator. After brief oral argument in which counsel for McVeigh was cut off mid-argument, the full CAC Appeal Board determined that there was good and sufficient reason

by the SFJATC to terminate McVeigh's apprenticeship. The reasons to uphold the termination are summarized as:

- McVeigh signed documents evidencing his knowledge and alleged agreement that three "unexcused absences" from class would constitute grounds to terminate his Apprentice Agreement, while McVeigh ultimately had five purportedly "unexcused" absences;

- Following McVeigh's pre-Policy 60-day suspension, McVeigh signed a "Zero Tolerance Agreement" under which he allegedly agreed that any future violation of the P&P could result in termination of his Apprentice Agreement;

- From January through August 2022 McVeigh was made aware of the Policy;

- McVeigh's "persistent failure" to provide the SFJATC with proof that he had consented to the experimental injection ("vaccination");

- McVeigh's "persistent failure and refusal" to apply for the SFJATC to recognize his constitutional right to the free exercise of religious (request an "exemption") prior to the SFJATC's arbitrary March 18 2022 purported deadline for rights-recognition;

- in light of that "persistent failure and refusal," any absences from class would be deemed unexcused;

- that his eventual five absences in August 2022 were in fact deemed "unexcused" and a violation of the SFJATC's P&P.

**CAUSES OF ACTION**
**Cause of Action No. 1**
**Title VII – 42 U.S.C. § 2000e-2(c)-(d) - Religious Discrimination**
**(John McVeigh v. San Francisco Joint Apprentice & Training Committee)**

57.   McVeigh hereby repeats, realleges and incorporates by reference all facts stated above.

58.    Under 42 U.S.C. § 2000e-2(c) – "Labor organization practices," it is unlawful employment practice for a labor organization:

> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his … religion;

> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's .. religion; or

> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

59.    Under 42 U.S.C. § 2000e-2(d) – "Training programs"– It is unlawful employment practice:

> … for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his … religion … in admission to, or employment in, any program established to provide apprenticeship or other training.

60.    As set forth above and herein, McVeigh had a sincerely held religious belief that conflicted with SFJATC's mandatory Covid vaccination policy. McVeigh communicated his sincerely held religious beliefs to the SFJATC in September 2022. Instead of engaging in a meaningful interactive process to determine if a reasonable accommodation could be provided to McVeigh, the SFJATC terminated him for his sincerely held religious beliefs

61.    Title VII requires reasonable accommodations for McVeigh's religious beliefs, unless doing so would impose an "undue hardship" on SFJATC. 42 U.S.C. § 2000e(j); Cal.

VERIFIED PETITION FOR WRIT OF MANDATE

Gov't Code § 12940(l)(1). "'[U]ndue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023); and see Cal. Gov't Code § 12926(u) (defining "[u]ndue hardship" as "an action requiring significant difficulty or expense").

62.    Here, the Policy implemented by the SFJATC mandated that McVeigh allow himself to be injected with an experimental substance that was developed using aborted human fetal cells. The Policy certainly had a coercive effect operating against McVeigh in the practice of his religion. According to McVeigh's sincerely held religious beliefs, any practice relying in any way on the use of fetal cells is a grave sin.

63.    McVeigh did not request an "exemption" to the injection mandate before the arbitrary deadline specified in the challenged Policy, nor did explain his religious rights to SFJATC before the arbitrary deadline in the challenged Policy.

64.    Nowhere does Title VII contemplate the allowance of imposing an arbitrary deadline for asserting one's religious freedom.

65.    McVeigh never engaged in "a course of conduct indicating waiver," nor does SFJATC allege that he has.

66.    SFJATC never engaged in any process to determine if a reasonable accommodation could be provided let alone a meaningful one.

67.    The challenged Policy inverts the entire concept of constitutional rights by establishing a purported deadline by which an apprentice must "request" his religious freedom, praying that JATC grants his religious freedom it its mercy. This inversion evidences a deliberate indifference to McVeigh's God-given, constitutionally-guaranteed and Title VII-codified right to the free exercise of religion.

68.    SFJATC terminated McVeigh from the apprenticeship program on September 21, 2022.

VERIFIED PETITION FOR WRIT OF MANDATE

69. Plaintiff's assertion of his long held and good faith religious belief and right to privacy were the substantial motivating factors in Defendant's decision to terminate Plaintiff's employment and all other adverse employment actions taken against Plaintiff.

70. As a proximate result of Defendant's wrongful conduct, plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits. The full amount of this damage will be determined at trial.

71. As a proximate result of Defendant's wrongful conduct, each of them, plaintiff has suffered and continues to suffer humiliation, severe emotional distress, mental pain and anguish, all to Plaintiff's damage in an amount to be determined at trial according to proof.

## PRAYER FOR RELIEF

72. Wherefore, Petitioner prays for relief as follows:

73. For monetary damages in the amount of at least $609,912.10 for lost income, with such amount to be documented in at an evidentiary hearing;

74. For any other monetary loss actually and proximately caused by Respondents' actions;

75. For any general damages as may be appropriate;

76. For reasonable attorney fees as allowed by contract or by statute;

77. For the cost of the suit;

78. For any other relief appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

79. Petitioner hereby demands a jury trial for any factual disputes that Respondents may present.

Respectfully submitted on February 21, 2025,

_____

Tracy L. Henderson, Esq.

11
VERIFIED PETITION FOR WRIT OF MANDATE

**VERIFICATION OF JOHN McVEIGH**

I am the Petitioner of this Petition. I have made a thorough review of all the factual allegations stated above. These facts are within my personal knowledge, and I attest to the accuracy thereof. As to those facts alleged on information and belief, I believe those things to be true, as reasonable inferences from the facts which are within my personal knowledge. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Respectfully submitted on February 21, 2025,

_John McVeigh_
_____

John McVeigh

VERIFIED PETITION FOR WRIT OF MANDATE